Westport Auto Sales, Inc. v. County of Lawrence. Please proceed. Thank you, Your Honor. It pleases the court. Good, I guess we're still morning, Your Honor, Counsel. My name is Chad Sullivan, and I am attorney for Westport Auto Sales, the appellant in this matter. We are here appealing the trial court decision because we truly think it has potential to be a dangerous precedence. It may be the law of unintended consequences, but I think taking the trial court's decision and defendant's argument, it would preclude virtually any claim against a municipality except for direct breach of contracts. I don't think that's the law of Illinois, and I think it would be bad public policy. And the reason we say that is the trial court's decision and defendant's argument was, you cannot sue a municipality for any statement, any act, unless it's a legislative act, if it's in an ordinance. And, by the way, we have immunity for anything we do in an ordinance. When you put those two together, that doesn't leave anything left for bringing claims against a municipality. Regarding our specific claims, we brought two claims in the trial court, a promissory estoppel and a breach of contract claim. The promissory estoppel claim was dismissed by the trial court on a motion for summary judgment, and they argued two things in support of their decision of summary judgment. One, that there was no affirmative act on behalf of the municipality, and two, that the Tort Immunity Act barred any claims for promissory estoppel against the municipality. Regarding the first argument of no affirmative act, defendant only argued that element of promissory estoppel. They did not argue that there was no justifiable reliance or change of position, which are the other elements of promissory estoppel. They focused their entire argument on the affirmative act element. And what they said is that only affirmative act can be an ordinance, and it has to be an ordinance specific to the entity claim. We cited a number of cases in Illinois where equitable estoppel, promissory estoppel type claims were allowed to proceed against municipalities based on things other than an ordinance. We cited the K5 case, which relied on a letter from a director of a department that said it was okay to build a particular plant. That was sufficient basis for a promissory estoppel claim to proceed. We cited the GJZ case, where the facts were there was reliance on minutes from a council meeting and then the issuance of a building permit. We cited the Monop case, which was the granting and then rescission of a permit, which is actually very similar to what we have in the promise of entering into an ordinance and then rescission of the ordinance. Another case, we cited the Barba case. You had statements of village personnel. Basically, exactly what you had here, you had council members talking to plaintiff, making promises. And again, in the Barba case, that was sufficient to support claims for promissory estoppel. Council, on that claim, what's in the records of how many board members were talking to your client? Making the alleged promises? I think there's a variety. You had before the ordinance was passed, you had multiple members, including the chairman, Gillespie, that went to Mr. Yocum, who's the president of Westport Auto, saying, We really need your tax base. You've really got to come back. And we'll do this NFIP program so that you can come back. At the meeting where it was actually voted on, Mr. Yocum testified that all of the board members came up to him and said, We are entering this ordinance for you. We hope this takes care of everything so that you come back. So kind of a long-winded answer. I think the short answer is all of them talked to him at one point, specifically the evening the ordinance was passed, and told him, We're passing this ordinance for you. And the statements made by board members at the meeting, where's that in the record at? Is it in his deposition? It was in his deposition, Your Honor, yes. I believe. Was there anything during the council meeting when they passed this ordinance? I mean, is there anything in the minutes or anything where they said, We're passing this for him? Or did they just passed it and it applies to everybody in the county? I do not believe there's anything in the ordinance language itself or in the minutes that specifically say. So they made no official statements. Correct. So let me just ask you. I mean, OK, here, you know, your guy claims that they talked to him individually, you know, at the city hall and other places or whatever, and said they were going to pass this ordinance. And we know they did pass an ordinance. But what if they'd have all told him, You know, we want you to stay. We'll pass the ordinance. And he built. And then they didn't pass it even the first time. Would you still say you have a claim? I think that would be a weaker claim. And I think that fact scenario would follow some of the cases cited by defendants. I mean, you agree, don't you, that a municipality can only act through its elected representatives and through their official action? I think that's been an overstatement. And I think the cases that I just referenced, to give you a specific example, you know, the director of the building department wrote a letter to somebody saying, yes, you can build this. They relied on that letter. And the court said that's sufficient. And further back. And he had authority to allow him to build. Implied authority, at least. So that's my distinction with saying it can only act through elected officials, through ordinance. I think promissory stopping cases that we cite make that a little broader than just elected officials, just through ordinances. And again, I think that's like you said, regarding the hypothetical, if they wouldn't have passed the ordinance, that would have been similar to the Halak case that was cited by defendants. But that's not the scenario here. We had oral promises. We're going to enter this view. And in conjunction with that, it was a give and take. They were asking Mr. Yocum, you know, how much did you pay in taxes? Because, you know, that's part of what we have to look at if we're going to enter in this. So it was clear from the undisputed facts that the county was worried about the tax dollars it was going to lose. And that they entered this program so that they wouldn't lose those tax dollars. And so the affirmative act is that combination of things. The promises and then the enactment of the ordinance. And that makes that factually distinguishable from some of the cases cited by defendant. The other two cases, City of Chicago and Monarch, that defendants used in support of their argument on the affirmative act issue, actually kind of support our argument. They found an affirmative act. But they said there wasn't reasonable reliance. Reasonable reliance, again, is not an issue in our case. Accordingly, we think the overwhelming judicial law here in Illinois shows that the acts conducted by council members in the ordinance constitute an affirmative act. And the promissory estoppel claim should not have been dismissed as a matter of law. Regarding the tort immunity act on the promissory estoppel. Initially, the tort immunity act is in derogation to common law and must be strictly construed. We believe the trial court defendants argument is pretty expansive view of the act. Which is contrary to the numerous lines of cases that say it has to be strictly construed. And how they want to expand the tort immunity act is for it to include equitable estoppel claims. Defendants did not cite to a case in their arguments where the court dismissed an equitable estoppel type of claim based on the tort immunity act. Instead they cited to some tort acts, a negligence act and an equal protection case. We have cited to a long lineage of cases in Illinois where promissory estoppel, equitable estoppel claims have been brought against municipalities. Accordingly, we don't think there's anything in the record that would support a finding that promissory estoppel claims are barred by the tort immunity act. The trial court cited the rain tree case in support of its decision to dismiss based on the tort immunity act. We think, one, that's a misapplication of the rain tree case. If you look at the rain tree case, it actually was taking a narrow construction of the tort immunity act. To say the tort immunity act does not apply to the statute of limitations that's in the tort immunity act. Does not apply because this is a claim for restitution, not damages.  The trial court here is using it for the exact opposite purpose. In trying to say that only claims for rescission, restitution, excuse me, can proceed under the tort immunity act. Regardless of the basis of the claim. We think that's an expanded reading of both the tort immunity act and the rain tree decision. It shouldn't be followed by this court. But moreover, even if you'd accept that reading of rain tree, there is a claim for restitution here. And mainly would be the taxes that were paid to the county by Westport. That was the whole design of entering this. Again, undisputed facts from the council members that that's why they were interested in getting into this. And so Westport has a claim for rescission of those taxes that it improperly paid once they pulled the rug out from under them and came out of the NFIP program. But taxes, are you talking about real estate taxes? There is employment taxes and the record shows they specifically asked how much have you paid in payroll taxes and how much have you paid in property taxes. But wouldn't you have been paying payroll taxes even if he was in Indiana? The record didn't show the difference of what the payroll taxes would be. I'm just having a little trouble seeing it. The county was unjustly enriched or that he's entitled to restitution on. But I mean, real estate taxes, maybe there's an argument there. And the other part of the record is that Mr. Yoakum was considering whether he was going to go back into business at all. He was looking at possibly relocating, possibly having to go into bankruptcy, and possibly just shutting it down and not doing anything. So as far as the record reflects, I don't know that we can say he would have been paying those taxes or would have been paying the same amount of taxes. And on your promissory estoppel claim, you're wanting damages for all that though, right? You know, loss of business, whatever. Yeah, loss of revenue. Also, the fact when they pulled out of the NFIP program, he lost financing and he lost flood insurance. There was a subsequent flood that came in and basically washed out the $500,000 in repairs he did to the building, etc. So yeah, part of our promissory estoppel claim are those damages. So accordingly, we think both of the cases for the ruling of the promissory estoppel do not uphold under Illinois law and the trial court's decision should be overturned. The trial court also dismissed Westport's second count, which was a breach of contract count. They dismissed that on a motion to dismiss. And the two primary reasons for that were that, one, they said there cannot be an implied contract against the municipality, and two, that there was no specific duty or sufficient benefit to plead a claim for breach of contract. Regarding the specific duty requirement that the court imposed, one, we contend there's no basis for that in Illinois law. There's no special duty required under the law. The key for a quasi-contract type of claim is unjustness. And the facts show there is manifest injustice in this case. Because what has happened here is they made promises. The county made promises. Move back. Bring the county here. We need the taxes. You've got to stay. We'll enter this program so you can do it. Because, again, the record is undisputed. He could not have rebuilt there but for them entering this NFIP program. He couldn't have got the money, the loans to do it, and he couldn't get flood insurance. Moreover, even if there was a special duty, I think the promises that they made to enter this program created that special duty. And this argument was specifically refuted recently in the PFC Jeffrey Morris case. We cited the block quote in our brief, and I won't repeat it here today. But the very argument that the trial court kind of set forth in its opinion was very specifically and kind of adamantly rebutted in a recent case in the PFC Jeffrey Morris. In saying there is no special duty requirement. The focus is on justice for quasi-contract type of claims. The other part that the trial court relies on is they said there was no sufficient benefit to support breach of contract claim. They said the ordinance wasn't in place that long. We think, first of all, just on a motion to dismiss, determining sufficiency of benefit is improper. That's not something that should be decided by a court on a motion to dismiss. But moreover, the ordinance was in place ten months. And it was in place exactly long enough for them to get the intended benefit of Westport spending almost half a million dollars to rebuild and be in business. They got tax dollars from 2009 to 2011. So I don't think there's any factual basis, even if the court were to properly consider the sufficiency of the benefit, which they had as a part of their reasoning for dismissing the breach of contract claim. In conclusion, defendant in their brief even quotes that equitable estoppel claims are here and in our jurisprudence to prevent fraud and injustice. And that's the exact situation we have here. A county just cannot be allowed to make promises for the sole intended benefit of bringing business, bringing dollars, bringing revenue into the county. And then once the situation is that that revenue is guaranteed, that they renege on their promises. Again, there's a case law that we put in the brief that says we just simply have to expect better of our government. And it can't allow such injustice to occur. Accordingly, based on Illinois law and the facts presented, we submit that the motion to dismiss and motion for summary judgment rulings of the trial court should be overturned. In this case, remanded to proceed the trial. Thank you. Thank you, counsel. Arguing for the affiliate. Thank you. Morning, your honors. I'm Joe Blair here on behalf of Lawrence County. We're asking this honorable court to affirm the trial court's granting of the motion for summary judgment and the dismissal of count to the second complaint. I noticed that in my brief, I indicated that the facts in this case are not complex. So I didn't cite to the particular record of what the facts were. But if you're looking at the record, the facts in this case are not complex. I think it's very clear and I kind of had an argument, but I want to respond to some of the questions that the court has presented here today. First and foremost, I think, and some of the questions about just this morning. It's to the point about what action is taken by the county. I'm on the school board. One of the first things I figured out was the first thing you need to do is count for because I can make every promise in the world to any teacher, anybody in the city about what I want to do with the school board. But unless there's four people and there's an action by the board to take affirmative matters in their hand to pass something. It doesn't matter what individual board member made promises to Mr. Gilbert, what individual board members had some discussion at City Hall, the coffee shop or anything else like that. I think the record is clear and it's the depositions of the various board members. There's no question. Westport Auto was a business in Lawrence County and it was a good, it was a nice business. But there were the plaintiff's argument falls in this particular case is that one discussion between Mr. Yoko and any specific member of the board does not make promissory stop. Does not make a quasi contract because the board of the county itself can only act as a board itself. Your argument in effect concedes that they made these individual promises. Judge, I will admit to I know Mr. The check. I don't want their promises. The county board chairman in his deposition, I believe, as far as record, he said, no question. I was talking to Mr. Gilbert. It's a business and we'd like to have a mechanic. But also in that deposition, Mr. Gillespie also says 23 years. He was on the county board going into the national flood insurance program and coming out of national flood insurance program was the most contentious actions of the county board. And the whole county was in up in arms about some people wanted it. Some people didn't want it. I think you asked a question about minutes or something from the board minutes. Matter of fact, the record shows that they move the meeting that they had about going into this thing upstairs to the courtroom. So that the place so many people spoke. There's no question. He spoke at it. He says it'd be a nice thing for to get it. Help me move. Help me move forward. But a couple of things about the argument fails in that regard. And I just want to address the tax issue. The record. You read the taxes they were referring to. And Mr. Gillespie was talking about was the sales tax revenue. About a car dealership in the county. How much sales tax the county. So it's no restitution. I mean, the business closed down. You don't get to apply back for your sales tax. That's a tax that's paid directly upon the sale and goes to the county. Paid by the consumer. Not by Westport. And they're required to collect it and submit it. That is correct. There's no restitution. And there was a question, I think. I can't think of the gentleman's name now. The board member. An older guy I've seen. But he was talking about payroll taxes. They were trying to figure out how many people the place employed. It was. And even if it. Payroll taxes. That's something you collect. The employer collects. Sends off to Uncle Sam's estate in Illinois. And there's not any type of restitution in that regard. But. This contentious of this whole county board. Is there is nothing in the minutes. There is nothing in the ordinance. That anything was done specifically coming in the program. Or going out of the program. For Westport Hall. Let me ask another question about this meeting. Whenever they actually passed the ordinance. And Mr. Yoakum spoke at it. Did other individuals from the county speak in favor of it? And others against it? Judge. And I'm trying to remember. There was a meeting when it went in. A meeting when they went out. And Mr. Yoakum spoke. And I apologize to you. But he was one of the. Few that spoke for it. Okay. And the meeting. And I can't remember which meeting it was. Because. Because it was. Long and short of it is. They got in. And once the whole county's in. It affects everybody's. Ability to get loans. Everybody's mortgages. You ever talk about. The previous sergeant talked about that stuff. It. It presents a whole number of problems. And that's what. The issue is. Where I think the plaintiff's case fails. It might be different. If the ordinance said specifically. Westport. Or we're doing this for Westport. But it was the whole county. And it kind of goes in the court. That Judge Hopkins even mentioned. He says. You know. If the. If the county board. Votes. Generally for the whole county. Then they. And if they're. It's sued because they. Vote out of the ordinance. A general ordinance. There. They would never be. Able to. Do something. That maybe wasn't good. For the county. And. And this is what. You look at the minute. The record. That's what. We talked about. We voted into it. Everybody got to know. What it was. And it wasn't good. For the county. As a whole. And we voted out. And it's another thing. About the. Arguments for Westport. Nothing. Prevented Westport. From. Continuing to build. After they got out. Of the flood insurance program. Nothing. Prevented it from getting. Flood insurance. I will. Admit. That the record. Mr. Jokin. Talked about. It would have been. More expensive. There's no question. Because. Apparently. And I'm not an expert. On national. Flood insurance program. But it provides. Avenues. To be able. To get insurance. And small business. And have to have insurance. Because I think. That's one of Mr. Jokin's. Floodings. That's in his record. He didn't have any. Flood insurance. And then. He got insurance. When they got. The flood program. And then when they got out. It. He had to pay. More expensive. And he chose not to. And I think that's. The issue here. Because all. And I admit. I agree. There's a lot of cases. That the. Judge Hopson. Went through the claims. Sites. By. Promissory stopper. But every case. That talks to. In the. Briefs. In the cases. Those. Promissory stoppers. Usually. Had to deal with. The specific. Defendant. Or I shouldn't say defendant. The specific entity. Dealing with. The municipality. Was. Part of. That specific. Issue. Unlike. This case. And I'd like to say. If Westport. Would have been mentioned. Hey. We're going to. Pass this for Westport. I think we. Have a horse. Of a different color. If we were here today. But under the facts. And circumstances. There was no specific. Meeting. Or no specific. Agreement. For Westport. The county. Ward. As a unit. Voted in. The county. Your unit. Is a. As a unit. Voted out. Which. They have the right. To do. Under the legislature. And. And. The Torb. Union Act. Provides. And it's. And it's. Absolutely. It's not a. Wolf. And want. Standard. And it. Can't be. Held liable. For either. Acting or. Failing to adopt. An ordinance. Or law. On this. And it might be harsh. I've been. I've heard before. Some of these. Be arguing. Torb. Union issues. And. But that is. The way it is. And it. The county. Couldn't operate. In this particular case. Unless it. Didn't have that. Protection. I mean. You wouldn't have anybody. Running for office. You wouldn't have any. The county. And you. You need someone to. Grant. You a commitment. Which. At a standstill. If the county. Was hamstrung. Or hand tied. To enact. Ordinances. Good or bad. Or to get an ordinance. Come out of an ordinance. When the whole county. In itself. Is. Affected. And it's for the good of the county. Not one specific. Person. And I think. Based upon. The. It. Has the promissory. To stop the cases. That are. Mentioned by the. Trial court. And in the brief. Had to do with. Issues. I know. Like. Well the K5. Point case. That he's. Mr. Sullivan. Mentioned this morning. If you read the case. That had to do with. Where a plant. Was operated. An asphalt plant. Then they ceased operation. Then they opened it back up. And it's an issue. Of latches. And whether or not. They. That specific plant. Did have a. Special use permit. So to speak. To operate. As an asphalt plant. Moving forward. The. Barber case. Cited in this. It was like a. It had to do with. A. Retired fire chief. There was some. Something specifically. In the ordinance. About the payment. Of the longevity pay. For that particular. Fire chief. That allowed them. To do it. The sign ordinances. Or the billing. Permit ordinances. Or billing. Permit cases. All had to do. Specifically. Was the entity. Gave a specific. Person or entity. A building. Billing permit. Then something happened. Those would be. Something. That you could rely upon. In this particular case. And I. Admit that. We. We. Did the. Three prong test. We didn't argue. The other. Two prongs. Because. I assume. Mr. Yogan did what he did on. I can't deny. What he says. Why he did everything. But there was no. Affirmative action. Beginning. By the county board. Specifically. Paul Yogan. You know. Mr. Yogan spoke for. Other people spoke for. And I think. Based upon. The. Lack of any specific. Comment. Lack of any specific. Language. In the ordinance. Directly. To Westport. Westport Plaza. Westport Autos. The. There is no. Promissory. Estoppel claim. And there is also. The tour. Immunity. Provides. Immunity for the county. To go in and out. As the trial court said. If not. The county. Would never be able to. Do any kind of. Ordinance. With. Fear of. Being. Sued. For coming in. Or out of a. Ordinance. When it's not. Any specific. About a person. The. Implied contract. The second count. I think it. The Arkansas County. Law. There was no specific. Implied. Quasi. Whatever. Quasi. Contract. In law. With Paul. With Westport. Auto. Because there was. No specific. Agreement. Between the county. Board. And Westport. Auto. And I. Like I said. I don't disagree. That there was. The record says. There was conversations. Between certain. Board members. But without. The action. By the county. Board itself. Specifically mentioned. Westport Plaza. Westport. Auto. There is no. Promissory. Stop a claim. The tour. Immunity. Act. There is no way. The county. Board. Came in. And out. Of an ordinance. And also. There is no. Quasi. Contract. As. Count to. And I believe. Judge. Hopkins. He did. Very. I think. One opinion. One order. Was 21. Pages. The other. Was 30. Some odd. Pages. And be honest about it. Preparing today. I read. Those orders. Just because. He pretty well. Went through. What the case. Law is. And cited. The cases. Mr. Sullivan. Said. And said. A case. And I said. Did a very good job. I thought. And so. Unless there's any. Other questions. We're just. Asked it. Please. Affirm. The trial. Court. Pleasure. Speaking. With you all. This morning. Thank you. Thank you for having us.   And he and his. Father. And you. To go through a lot. To get the SBA. A. S. SA loan. And. He to that. In a requisite event. Was being. A county being in the N. F. I. P program. As soon as the county would. For the entire. Program. The SBA a. Cancel. Remain. Durable and he did not have other. Options for findings. So. They absolutely. Did preclude him from. Further rebuilding. To provide the other services. That he was going to. Do. Because they withdrew. From the program. And under your theory. Could anybody else. Who was harmed. In the county. By the withdrawal. From the. N. F. I. P. Sue. Not unless. The party. Also got specific. Promises. In the same manner. That Mr. York. Okay. So. So really. You're you. Would say. Your cause of action. You know. Relies on those specific. Person to person. Promises. Yes. Both. You know. With. Prior to. The negotiations. And at the council meeting. All right. They all came up to him. And told. This is obviously. A contentious issue. What if. A group of people. In the county. Would have. Who were. Angered over. Being in the program. Ran a slate of candidates. Elected a new county board. And as promised. In their campaign. Then withdrew. From the NFIP. In other words. The people who. Pulled out. Were not the same people. Who made these promises. I think. The liability. Was still attached. To the municipality. Based on. Municipality. Tax. But what's. Okay. This is getting. Framed. By council. As. Almost like a situation. Where he just read. In the paper. Oh look. The county entered. This NFIP program. Maybe I'll. I'll rebuild. My business there now. That is not the scenario. We have. Well. That's why I ask you. I mean. I think they concede. That they went. And said. You know. We want you to build. And we're going to get in the program. And so forth. And so on. I mean. What was it? President Reagan said. Were the scariest words. In the English language. We're from the government. We're here to help you. You know. I would agree with that statement. But. But I think. As a matter of public policy. When they argue. Oh we can't be handcuffed. You know. To do this. Well. You don't need to go make these promises. That's where they handcuff themselves. Is by their acts. Of making these promises. Come spend a million dollars. In rebuilding. And we'll enter this program for you. That's where handcuffing. Not just. The fact that we're now. Holding them accountable. For not living up to their. Their promises. Yeah. I would agree. If Mr. Yoakum. Just heard about this. And weren't made promises. In advance. And in conjunction. With the passing. We wouldn't have. An argument here. But that's not the facts. Of this case. That's not why. There's this manifest. Adjustment. Of promises made. And promises broken. Once. The county. Received the benefit. That they wanted. To receive. For making the promises. Regarding the argument. About. You have to specifically. Mention Westport. In the ordinance. For that. To count. I think that's. Right for abuse. And I think. Anyone. Could draft an ordinance. That would apply. You could do tax abatements. Entice. Multi-million dollar investment. In your county. So long as you don't say. Toyota. In your tax abatement ordinance. Then you can renege on the tax abatement. As soon as they build. I just think. I don't think that's. The status of the law. For one. And two.      You can make all the promises. You want to make. You can make all the promises. You can make all the promises. You can make all the promises. You can make all the promises. You just don't want. Behind the scenes. And in the passing. Just don't put their name. In the ordinance. I think would be. Very bad public policy. That would be right. For abuse. I think your Honor. Those were the two points. That I need to clarify. Thank you.      Thank you. Thank you very much. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.